## FLETCHER & BROTHERS v. RICHARD B. HAWKINS.

An association, formed for the purpose of mining and trading in Cali-
fornia, stipulated that a statement of its affairs should be made in one
year, and that a division of the profits over and above the original capital
invested should then be made *pro rata* to each and every member of the
association.   The defendant sent out one man holding one share, for
which the defendant advanced three hundred dollars and took an assign-
ment of the share to himself, and the man sent out agreed to remit to
him one half the profits of said share.   The defendant, in consideration
of three hundred dollars, guaranteed to the plaintiffs one fourth part
of the profits of said one share, when the dividend should be made ac-
cording to the form of the co-partnership.   On their way out the associa-
tion dissolved, sold the company property and divided the proceeds
among the members, according to the shares which each represented,
and upon the understanding that each man should go on and mine for
him, who sent him out, in the same manner and upon the same terms as
if the association had not been dissolved.   The man sent out by the de-
fendant sent home to him eighteen ounces of gold dust worth about three
hundred dollars, and the defendant receipted for it as " one half the pro-
ceeds of his engagement for defendant in California for two years."   The
plaintiffs sued the defendant for one half said gold dust as being one
fourth part of the profits of the adventure : *Held*, that the word " profits"
in the defendant's guaranty did not mean simply returns, but profits in
the strict sense of the term exclusive of the capital ; that, no dividend of
profits having been made according to the form of the co-partnership,

the plaintiffs were not entitled to recover under said guaranty, and that the defendant was not bound by his receipt of the eighteen ounces of gold to account to the plaintiffs for one half thereof, he being entitled as the owner of the share to an account of the proceeds of said share and the profits made thereon upon equitable principles, and such accounting was irrespective of the agreement between the plaintiffs and the defendant and was founded upon property in the defendant.

COVENANT upon the following agreement : " The said Richard B. Hawkins doth hereby covenant and agree, for the consideration hereinafter mentioned, that he will send out in the Narragansett Trading and Mining Association one man, holding one share in said Association, and, in consideration of the sum of three hundred dollars in hand paid to said Richard B. Hawkins by the said Fletcher & Brothers, he the said Richard B. Hawkins will guarantee unto the said Fletcher & Brothers one fourth part of the profits of said one share of said Association, when the dividend shall be made according to the form of their co-partnership ; provided, however, that if the person holding the said share in said Association shall by his acts forfeit said share according to their form of co-partnership, then said Hawkins shall not be bound to pay said profits, and this agreement shall be null and void."

The constitution of the Narragansett Trading and Mining Association declared, that it was a joint stock company formed " for the purpose of buying or chartering a ship and freighting her, as the directors should see fit, for the coast of California, and engaging in such trading and mining operations, as should be deemed most advisable." Every stockholder was to pay in the sum of three hundred dollars, and after the sailing of the vessel, to devote his time and attention wholly to the interests of the company, and use his best skill and judgment in promoting the profits of the business, and, during the continuance of

the agreement, neither to engage in any speculation on his own separate account, or to be interested in any other business than that of the Association.   His interest in the Association was to be forfeited by a withdrawal, unless upon certain prescribed terms.   By the eighth section it was provided :  " A statement of the affairs of the Association shall be made in one year from the date of this instrument, and a division of the profits, over and above the original capital invested, shall than be made, *pro rata*, to each and every member of the Association."   No time was prescribed for the duration of the company.

According to the agreement between the plaintiffs and defendant, the defendant sent out Asa A. Andrews, holding one share in said association, and, previous to the sailing thereof, said Andrews executed to the defendant a transfer of his interest in the association, and also one half part of all his proportion and interest in and to the profits, which should accrue to said association during the existence thereof, and to which he should be entitled agreeably to the Constitution and By-laws.

On the voyage to San Francisco, the association was dissolved by the unanimous consent of the members, and, on their arrival at that port, the property was sold and divided among the members according to their shares, but upon the understanding that each man would go on and mine for him, who sent him out, in the same manner and on the same terms as if the association had not been dissolved.   One member refused to accede to these terms, and he received no part of his distributive share.   Andrews received the proceeds of the share of the company property which he represented, amounting to about three hundred and fifty dollars, went to the mines and worked at mining, and sent home to the defendant, as his share, eighteen ounces of dust worth about three hundred dol-

lars for which the defendant receipted as follows: "Received of Asa A. Andrews eighteen ounces of gold dust, being one half the proceeds of A. A. Andrews' engagement with R. B. Hawkins for two years in California." The plaintiffs claimed one half this amount by virtue of the covenant with the defendant.

A jury trial was waived and the case was submitted to the Court upon the pleadings and the evidence.

*Tillinghast* and *Bradley* for the defendant contended, that, no profits having accrued to the association according to the form of the copartnership, the plaintiffs were not entitled to any part of the proceeds remitted, which were simply re-payment of the amount taken by Andrews, upon the sale of the defendant's interest in the property, and under the distribution made by the Company.

*Ames* and *Payne* contended for the plaintiffs, that all the capital of the Company was intended to be consumed in getting the members to the mines and supporting them when there, and that the word profits in the agreement meant returns of whatever kind. That Andrews, having received a share in the distribution of the Company's property, upon condition that he would go on and complete his engagement with the defendant, was estopped from denying his liability thereon, and that the defendant, by his receipt of the proceeds in accordance with this arrangement, was affected by the same estoppel.

GREENE, C. J., delivered the opinion of the Court. (After stating the Covenant as above.) The defendant did send out in the Narragansett Trading and Mining Association one man, Asa A. Andrews, holding one share in said association, but in the voyage to San Francisco,

the association was dissolved by the unanimous consent of the members, and, on their arrival at that port, the property of the association was sold and divided among the members according to their shares, but upon the understanding that each man would go on and mine for him who sent him out, in the same manner and on the same terms as if the association had not been dissolved. One member refused to accede to these terms and he received no part of his distributive share. Andrews received the share of the Company property which he represented, went to the mines and worked at mining and sent home to the defendant, as his share, eighteen ounces of dust worth about three hundred dollars, of which the plaintiffs claim one half, as profits, in the sense of the covenant. On the 7th of February, 1849, and before sailing from Providence, Andrews received from the defendant three hundred dollars, being the amount required to be advanced for each share towards the capital stock, and assigned to the defendant all his interest in the capital stock of the association, and one half of his proportion of the property, which might accrue to said association during the existence thereof, and to which he might be entitled agreeably to the constitution and by-laws of the association. These are the leading facts.

The counsel for the plaintiffs contended, that, in a mining company of this sort, the whole capital is contemplated by the parties to be expended in getting the miners to the mines and supplying them with provisions and tools to mine with, and that profits, therefore, in such a Company means returns. But the constitution of the association declares, it is formed for the purpose of buying or chartering a ship and freighting her, as the directors shall see fit, for the coast of California, and engaging in such trading and mining operations, as shall be deemed

most advisable. And the eighth article of the constitution, provides for a division of the profits over and above the original capital invested. It is evident this article contemplates a division of profits, as distinguished from capital, and a division which shall leave the capital undiminished.

And we think the agreement uses the terms in the same sense, inasmuch as it declares the profits, guaranteed to the plaintiffs, are such as shall be made according to the form of the co-partnership, that is, shall be divided according to the provisions of the constitution of the association. And there is no provision in the constitution for making a division of profits except the article referred to. Besides, this is the ordinary mercantile and legal sense of the term, and the burthen is on the plaintiffs to show it was used in a different sense in this agreement. Under different circumstances, this term might very properly receive the construction contended for in the present case. But we must take the contract as the parties have made it. It may be a hard bargain on the plaintiffs, who, it seems, furnished the whole amount advanced to Andrews, and got in return no interest in the capital stock, and nothing, but a guaranty of one quarter of the profits on the share when declared. They did not require of the defendant any stipulation, that the company should continue to transact business for any definite period, or that they should make a dividend of profits, or that in the event of a dissolution they, the plaintiffs, should be entitled to a certain proportion of the Company property, or the property which the partner should make individually on the share he should receive of the company property, or that the defendant should, in any way, be responsible for the conduct of the company or of any of the members thereof;—all they have stipulated for is one quarter of

such profits on the share, as shall be made according to the form of the co-partnership.

Again, there could be no accruing of profits to the company out of company business, after the distribution of the company property among the partners. What was company property, during the existence of the co-partnership, became, by the dissolution of the one and distribution of the other, the private property of the partners, and the same of any property thereafter made upon it ? Nor is this aspect of the case changed, by the fact that each partner received his distributive share, upon the understanding that he was to use it for mining and account for it and the profits on it to the party at home, whom he represented. The property and profits were still private, and are not embraced by the language of the agreement.

The plaintiffs have taken the risk of what has happened, and they cannot now be permitted to construe their contract as if they had provided against it.

Neither do we think that the defendant is estopped from denying that any profits have accrued in the sense of the agreement, by the fact that he has received from Andrews more than half of all his earnings at the mines.

The defendant, under the assignment to him by Andrews, became the owner of the share represented by Andrews, but entitled only to one half of the profits which might accrue to the association, during the existence thereof and to which Andrews might be entitled agreeably to the constitution and by-laws of the association.

These profits, as already stated, for another purpose, are defined in the article of the constitution already referred to. No profits accrued during the existence of the association, and, therefore, there are none to divide between Andrews and the defendant under this agreement. But Andrews, having taken the proceeds of the share

owned by Hawkins to his private account and used it in his private business without the the consent of the defendant, is liable in equity to account to the defendant both for the capital and profits upon equitable principles, and such accounting is quite irrespective of the agreement between the plaintiffs and the defendant, and is founded on property in Hawkins.

The understanding on which Andrews, in common with the other partners, received the share of the company property, which each represented, does not strengthen the obligation of Andrews to account. He would be equally liable without such understanding.